ROBERT S. EPSTEIN & others *vs.* LAHEY CLINIC FOUNDATION, INC. August 24, 1982. By this action the plaintiffs seek specific performance of a certain purchase and sale agreement for a parcel of land owned by the defendant. The plaintiffs allege that they entered into an oral contract with the defendant for the subject parcel and that subsequently there was a sufficient memorandum of that contract to satisfy the Statute of Frauds. See G. L. c. 259, § 1.

The judge made detailed findings of fact and stated conclusions of law based on those findings. See Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). The plaintiffs appeal from the ensuing judgment for the defendant, dismissing their complaint. We think that the reasoning of *Tull* v. *Mister Donut Dev. Corp.*, 7 Mass. App. Ct. 626, 629-631 (1979), controls the circumstances of this case, and affirm.

The defendant takes the position on appeal that it is only necessary for this court to determine whether the judge's finding that the plaintiffs "failed to accept [the defendant's] offer prior to revocation is clearly erroneous." We agree that this narrow question is dispositive of the case, and conclude that this finding has an adequate basis in the record.

The judge concluded that it was "agreed" by the parties that acceptance by the plaintiffs would be effectuated by the signing of the purchase and sale agreement by two of the principals, Robert and David Epstein. See *Bishop* v. *Eaton*, 161 Mass. 496, 500 (1894). That determination is supported by the finding that the plaintiffs knew that the defendant "was anxious to have the purchase and sale agreement signed" and had previously rejected "another offer" because the other party wanted to delay the signing of an agreement. Further support is provided by the finding that the plaintiffs were aware that the defendant "was considering a [subsequent] higher offer." From these two findings it can fairly be inferred that the defendant would continue to invite and entertain competing offers until the purchase and sale agreement should be executed. Moreover, a determination that there would be no enforceable contract until the purchase and sale agreement should be signed by the plaintiffs and tendered to the defendant can hardly be denominated clearly erroneous in light of the magnitude and complexity of the transaction, and what is the usual practice in such circumstances.

There was conflicting evidence as to when Robert signed. "Where there is oral evidence, the credibility of the witnesses and the relative weight of their testimony are for the determination of the trial judge." *Hamilton* v. *Hamilton*, 325 Mass. 278, 279 (1950). (No evidence was presented as to when David signed.) The judge concluded from "testimony of Lindsay [the defendant's counsel], and the language of Exhibit 6 . . . that Robert had not signed [the purchase and sale agreement] prior to the revocation by the defendant on the 19th [of February]" (footnote omitted).

We think that the judge's conclusion is correct. Exhibit 6, a letter from the defendant's counsel to Robert, dated February 19, 1980, contains language to the effect that on that date the plaintiffs' attorney said that he was going to advise Robert to sign the agreement. Moreover, there is nothing in the record which tends to undercut the finding that the offer was in fact revoked on February 19, such revocation occurring prior to the time Robert signed the agreement as well as prior to the time the plaintiffs communicated their acceptance to the defendant. See *Cruver Mfg. Co.* v. *Rousseau*, 240 Mass. 168, 169-170 (1921).

Deciding as we do, we have no occasion to discuss whether there existed a writing signed by the party to be charged which gave effect to a purported oral contract.

*Judgment affirmed.*

*Harold Rosenwald (Timothy H. Donohue* with him) for the plaintiffs.
*David M. Roseman (Terrance J. Hamilton* with him) for the defendant.